RAFAEL LUIS RIVERA GARCÍA ET AL., Petitioners, *v.* SUPERIOR COURT OF PUERTO RICO, HUMACAO PART, JOSÉ DÁVILA ORTIZ, JUDGE, Respondent.

No. C-65-108.        Decided June 27, 1966.

*Guillermo Bird Martínez, Faustino R. Aponte,* and *Arturo Aponte Parés* for petitioners. *Rieckehoff, Calderón, Vargas & Arroyo* for intervener Félix Parrilla.

Second Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

The facts stipulated in the present case are the following: On July 28, 1901, Esteban Díaz Sabino married Belén Castaño Rivera, which marriage lasted until Esteban's death on March 29, 1959. Subsequent to his marriage and between the years 1923 and 1924, Esteban had marital relations with a woman known as Juanita Parrilla, from which relations a child was born on March 26, 1924, known as Félix Parrilla.

An action for his acknowledgment as a son born out of wedlock was filed on March 2, 1964. As it may be seen, in 1945 the son became of age; when his father died in 1959, he was thirty-five years old; when he filed the complaint in 1964 his father had been dead five years. These facts show that the filiation action prescribed on March 29, 1960. It is convenient to remember that by 1960 there had already been approved Act No. 229 of May 12, 1942, as amended by Act No. 243 of May 12, 1945, which declared natural children all the children born out of wedlock, irrespective of whether their parents could or could not have married each other at the moment when such children were conceived; Section 1 of Art. II of the Constitution of the Commonwealth of Puerto Rico had been adopted, providing that: "No discrimination shall be made on account of race, color, sex, birth, social origin or condition, or political or religious ideas" and Act No. 17 of August 20, 1952, giving the same rights to children born in and out of wedlock with respect to their parents and to the estate left by the latter had been approved.

The trial court rendered judgment against the prescription of the action for the following reasons: "It is not until after the approval of our Constitution that it was definitively established that the adulterine children had the same rights as the legitimate children; neither the constitutional provision nor Act No. 17 established any prescriptive term whatsoever for a child born of a married father or mother to attain the full recognition of his rights on equal terms with the legitimate child. And we have already seen that § 126 of the Civil Code, in its own terms, limits its scope and the term for the institution of the action for acknowledgment to presumptive natural children. . . . We hold that the action of the adulterine child whose parents shall have died subsequent to the approval of the Constitution of the Commonwealth of Puerto Rico has no prescriptive term whatsoever, and that is so, because neither the Constitution

which created the right nor Act No. 17, *supra*, established any prescriptive term. However, if there exists any prescriptive term for the institution of said action it would be fifteen years pursuant to § 1864 of the Civil Code, which provides the following: 'A mortgage action prescribes after twenty years, and those which are personal and for which no special term of prescription is fixed, after fifteen years.' The complaint in the case at bar having been filed on March 2, 1964, that is, about five years after Esteban Díaz Sabino's death, it is evident that plaintiff filed his complaint seasonably."

The conclusions of the trial court are contrary to law. It is true that the Constitution of Puerto Rico does not establish any prescriptive term for the adulterine child to attain the same rights as the legitimate children. The Constitution does not have it because this kind of provision corresponds to private law and not to the political law. It is for that reason that the transitory provisions of our Constitution establish that, when the Constitution goes into effect, all laws not inconsistent therewith shall continue in full force until amended or repealed, or until they expire by their own terms. On the other hand, we have already seen that since the approval of Act No. 229 of May 12, 1942, the adulterine children became natural children, and as such, were covered by the prescription provisions of § 126 of our Civil Code before our Constitution of 1952 went into effect. Assuming that § 1864 of the Civil Code were applicable to the situation of facts in the present case, we still would have to reconcile it with § 1869, which provides: "The time for the prescription of all kinds of actions, when there is no special provision to the contrary, shall be counted from the day on which they could have been instituted." In this case petitioner's right to request his status of recognized son would have prescribed in 1960. As may be seen, the rule of prescription established by § 126 which permits the action

for recognition during the whole life of the presumptive father and a year beyond his death is more effective and human. It is unquestionable that there is no conflict whatsoever between the provisions of our Constitution, in its lofty purpose of placing on equal footing the family rights, social and hereditary rights, of all the children and the traditional methods of our Family Law to impeach the presumptions of legitimacy of the children born in wedlock and establish the recognition of children born out of wedlock.

The order entered by the Superior Court of Puerto Rico, Humacao Part, on July 13, 1965 will be reversed and judgment rendered sustaining the motion to dismiss filed by defendants-appellees.

Mr. Justice Hernández Matos shall, in due time, file an explanatory vote.